UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED KASTEN, DENISE McKEOWN,
DEAN ROBERSON, THOMAS SEP,
CHARLES WILLIAMS, KEITH CRUTCHFIELD,
and VINCENT SUTHERLAND,

        Plaintiffs,        CASE NUMBER: 09-11754
                                         HONORABLE VICTORIA A. ROBERTS
v.

FORD MOTOR COMPANY, a corporation,

        Defendant.
_____/

**ORDER DENYING FORD'S MOTION TO DISMISS AND
GRANTING PLAINTIFFS LEAVE TO AMEND COMPLAINT**

**I.    INTRODUCTION**

Plaintiffs are seven former salaried employees of Defendant Ford Motor Co., who claim they were laid off in violation of various state and federal anti-discrimination laws. Ford moves to dismiss (Dkt. #5), relying on the new pleading standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiffs contend their Complaint is adequately pled, but in the alternative, they ask for leave to amend.

The Court **DENIES** Ford's Motion to Dismiss and **GRANTS LEAVE** to amend.

**II.    BACKGROUND**

Plaintiffs lost their jobs as part of Ford's attempt to shrink its labor force in the face of a severe economic downturn. They claim that for several years, Ford used a forced-ranking employee evaluation system known as the Performance Contribution

Assessment ("the PCA").  The PCA compares employee performance using a pre-specified distribution ranking system.  Plaintiffs claim its original purpose was to determine which employees deserved merit salary increases and bonuses.  However, according to Plaintiffs, forced-ranking systems like this one favor young employees at the expense of older workers.

The Complaint alleges that in mid-2008, Ford implemented a company-wide Salaried Involuntary Reduction Process ("the SIRP"), the purpose of which is to select workers for severance.  According to its operative language, the SIRP uses PCA evaluations to determine which employees should be let go.  Plaintiffs argue the resulting layoffs disproportionately targeted older workers, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws ("M.C.L.") § 37.2201 et seq. (Counts I-IV).

Some plaintiffs also claim the use of forced-ranking assessments caused them to be laid off for other unlawful reasons, such as gender (Counts V & VII, violation of ELCRA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.), race (Counts VI & VIII, violation of ELCRA and Title VII), medical leave (Count IX, violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.), and pursuing workers' compensation benefits (Count X, violation of Michigan's Workers' Disability Compensation Act ("WDCA"), M.C.L. § 418.301(11) et seq.).

Plaintiffs filed their Complaint on May 6, 2009.  Twelve days later, the Supreme Court issued its opinion in *Ashcroft v. Iqbal*, which substantially altered the standard on a motion to dismiss.  Ford asked Plaintiffs whether they intended to amend the

2

Complaint in light of *Iqbal*; they declined.  On July 15, 2009, Ford moved to dismiss.

## III.  STANDARD OF REVIEW

In *Ashcroft v. Iqbal*, the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The new pleading standard was first set forth in *Bell Atl. Corp. v. Twombly*, an antitrust case.  However, in *Iqbal* the Court declared the *Twombly* standard would henceforth apply to "all civil actions."  *Iqbal*, 129 S. Ct. at 1953 (*quoting* Fed. R. Civ. P. 1).

In *Iqbal*, the Court explained that there are two "working principles" on a motion to dismiss.  *Id.* at 1949.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (*citing Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citation omitted) (alteration in original)).  The Court emphasized that legal conclusions couched as factual allegations do not satisfy a plaintiff's burden to plead "sufficient factual matter" in its complaint.  *Id.* at 1949-50.

The second principle of *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (*citing*

3

*Twombly*, 550 U.S. at 556). The Court explained that determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).

Together, *Iqbal* and *Twombly* form a substantial departure from the traditional standard set forth by Justice Black in *Conley v. Gibson*, 355 U.S. 41 (1957). *Conley* admonished courts to dismiss claims only if "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Id.* at 45-46 (emphasis added) (footnote omitted). After *Iqbal*, however, if "the well-pleaded facts do not permit the court to infer *more than the mere possibility* of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (emphasis added).

## IV.     ANALYSIS

Plaintiffs' claims can be divided between those alleging discrimination based on age, or other protected factors. For their age-related claims, Plaintiffs allege they are over 40 years-old, that Ford let them go while retaining younger, less-qualified workers for jobs they were qualified to perform, and that Ford employed a policy, the SIRP, which disproportionately targeted older workers because severance determinations were based on PCA evaluations. Plaintiffs claim that integrating PCA evaluations into the SIRP amounted to intentional discrimination, because Ford knew that employment decisions based on forced-ranking evaluations tend to grossly favor younger employees at the expense of older workers. In the alternative, Plaintiffs allege the SIRP is a facially neutral employment policy which, in practice, has a disparate impact on older salaried workers.

The Complaint's non age-related claims concern three specific plaintiffs, Keith Crutchfield, Dean Roberson and Denise McKeown. Messrs. Crutchfield and Roberson allege they had medical conditions which caused them to take FMLA-protected leaves of absence. They claim these health issues factored into the PCA's assessment of their performance, resulting in lower evaluations and causing the SIRP to terminate them while retaining other, healthier employees. Mr. Roberson also claims he was terminated in retaliation for requesting WDCA benefits.

Lastly, Ms. McKeown claims Ford intentionally discriminated against her on the basis of her African-American race and her gender. Ms. McKeown's factual allegations are the same as her co-plaintiffs, except that she claims Ford let her go while retaining less-qualified male and Caucasian employees.

Ford argues the Complaint is sparse and conclusory, and lacks sufficient factual matter to state a plausible claim for relief. Ford suggests that, based on the facts alleged, it is more likely that Plaintiffs' layoffs resulted from a rational decision to trim the company's work force based on job performance, rather than from discriminatory intent. *See Iqbal*, 129 S. Ct. at 1950-51 (in *Twombly*, parallel conduct among companies was consistent with an unlawful agreement between them, but was "more likely explained" by unchoreographed free-market behavior; likewise, Mr. Iqbal's allegations, while consistent with intentional discrimination, were "likely lawful and justified" by a nondiscriminatory policy aimed at detaining people suspected of being linked to the attacks of September 11, 2001). In any case, Ford submits, the Complaint fails to provide sufficient facts to state a plausible claim for relief.

A.      ***Swierkiewicz, Twombly*, and the "Flexible Plausibility Standard"**

5

Plaintiffs contend their Complaint is sufficient to withstand a motion to dismiss, and argue the pleading standard for employment discrimination claims is not governed by *Twombly* or *Iqbal*, but by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The question posed in *Swierkiewicz* was whether plaintiffs alleging discrimination in employment have to plead each element of the prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to state a claim for relief. *Swierkiewicz*, 534 U.S. at 508. Under *McDonnell Douglas*, to state a claim for discrimination based on circumstantial evidence, a plaintiff must allege: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz*, 534 U.S. at 510 (*citing McDonnell Douglas*, 411 U.S. at 802) (other citations omitted). The *Swierkiewicz* Court held that plaintiffs are not required to plead each of these four elements, because "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510.

Plaintiffs argue that *Swierkiewicz* creates an exception to *Twombly*'s pleading standard for employment discrimination claims. However, this analysis is deficient on one fundamental point: *Swierkiewicz* does not profess to construe the pleading standard of Fed. R. Civ. P. 8(a); on the other hand, *Twombly* is squarely "based on [the Court's] interpretation and application of Rule 8." *Iqbal*, 129 S. Ct. at 1953. *Twombly* retired the "no-set-of-facts" standard and replaced it with the requirement to plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 563, 570. *Swierkiewicz* simply held that pleading every element of the *McDonnell Douglas* prima facie case is not necessary to state a claim for employment discrimination. Therefore, read together,

*Swierkiewicz* and *Twombly* require employment discrimination plaintiffs to allege sufficient material facts to state a plausible claim for relief, but do not mandate doing so on every element of the *McDonnell Douglas* prima facie case.

Plaintiffs also contend that *Swierkiewicz*, *Twombly* and *Iqbal* create a flexible pleading standard, which varies based on the substantive claims and factual context of each case.  According to Plaintiffs, whereas *Swierkiewicz* rejected a heightened pleading standard for employment discrimination claims, *Twombly* and *Iqbal* ruled that for certain complex issues – such as antitrust claims and qualified immunity defenses – it is necessary to plead additional facts simply to state a claim for relief.  Plaintiffs argue the lesson of *Twombly* and *Iqbal* is that courts must analyze each claim in a complaint individually to determine whether, on that particular claim, a plaintiff must plead more facts to survive a motion to dismiss.  Since their discrimination claims are akin to those in *Swierkiewicz*, Plaintiffs conclude they are not obligated to plead additional facts.

In *Iqbal*, the court of appeals interpreted *Twombly* in much the same way as Plaintiffs do, saying it created a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal*, 129 S. Ct. at 1944 (*quoting Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original)).  Because the Supreme Court's ruling does not explicitly reject this interpretation, Plaintiffs argue it is correct.  In this Court's opinion, Plaintiffs read too much into *Iqbal*.  If the Supreme Court had meant to endorse a flexible plausibility standard, it would have said so explicitly.  As written, *Iqbal* is more appropriately read as clarifying that *Twombly* raised the pleading standard for all actions.

B.     Sufficiency of Plaintiffs' Factual Allegations

Regardless of whether Plaintiffs' Complaint touches on every element of the *McDonnell Douglas* prima facie case, it fails to allege sufficient material facts.

This flaw is common to every count, but it is particularly glaring in Mr. Roberson's WDCA claim and Ms. McKeown's race and gender discrimination claims. Mr. Roberson and Ms. McKeown state the same core facts as their co-plaintiffs: they are members of a protected class who were selected for termination by a labor-reduction program which discriminates on the basis of their age. For his WDCA claim, Mr. Roberson repeats these allegations, and simply adds that Ford also severed him for requesting workers' compensation benefits. Ms. McKeown does the same for her race and gender discrimination claims, except that she asserts Ford retained less-qualified male and Caucasian employees to work jobs for which she was qualified. Undoubtedly, these are the kind of minimalistic pleading the Supreme Court had in mind when it held that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 555). Furthermore, given the context of this lawsuit, and the fact that all Plaintiffs but one are Caucasian men, Ms. McKeown's conclusory statement does not provide a foundation upon which to infer "more than the mere possibility" of race or gender-based discrimination. *Id.* at 1950.

In defending the sufficiency of their Complaint, Plaintiffs cite the post-*Iqbal* case of *Jenkins v. New York City Transit Auth.*, No. 08 Civ. 6814, 2009 WL 1940103, 2009 U.S. Dist. LEXIS 56008 (S.D.N.Y. June 30, 2009) (unpublished). In *Jenkins*, the district court upheld a complaint filed by a bus operator who claimed she was fired because her

religion prohibited wearing pants with her uniform. 2009 U.S. Dist. LEXIS 56008 at *1. The plaintiff's factual pleadings span four paragraphs of the court's opinion, and include allegations that: upon hiring, she was told wearing a skirt was not a problem, and that other employees made similar requests; during training, she was informed wearing pants was strictly required, and had to sign a copy of the employer's uniform policy; she was singled out for ridicule and harassment by another employee; she was initially measured for a skort (a pair of shorts made to resemble a skirt), but later told she had to wear culottes (women's trousers cut to resemble a skirt); when her pastor said culottes were unacceptable, she was told to resign or be fired; she saw a female bus driver wearing a skirt. *Id.* at *3-6. These allegations are significantly more detailed than Plaintiffs' Complaint, and the Court finds that *Jenkins* is of no support to Plaintiffs.

Plaintiffs also rely on *Swierkiewicz*, where the facts alleged are more limited. In *Swierkiewicz*, the plaintiff was chief underwriting officer for a reinsurance company controlled by a French corporation. 534 U.S. at 508. He claimed the company's French CEO demoted and replaced him with a 32-year-old French national who had only a year of underwriting experience. *Id.* He also alleged the CEO isolated him in the company, excluded him from business decisions and meetings, and refused to meet to discuss his situation. *Id.* at 509. The Supreme Court held the complaint was sufficient to state a claim for a national origin and age discrimination, because it "detailed the events leading to [the plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514.

Compared to *Jenkins*, the allegations in *Swierkiewicz* are more cursory, but they

still provide more factual detail than Plaintiffs' Complaint. The Complaint states Plaintiffs' ages, but does not name those who replaced them, or give their ages. It identifies the policy which resulted in their severance, but does not explain why forced-ranking procedures disproportionately target older workers. It claims Ford was aware that such programs have discriminatory propensities, yet it does not state where this awareness came from, or supply evidence from which to infer that Ford designed the SIRP purposefully to cut older workers from its ranks.

The Court has no doubt Plaintiffs' Complaint would have survived a motion to dismiss before *Iqbal* expanded *Twombly* to all civil actions. However, Plaintiffs' factual allegations are too meager to satisfy the Supreme Court's newly-announced standard.

### C. Amending the Complaint

Because this action commenced before *Iqbal* was decided, equity justifies allowing Plaintiffs to amend their Complaint. *See Iqbal*, 129 S. Ct. at 1954 (remanding to the court of appeals to "decide . . . whether to remand to the District Court so that respondent can seek leave to amend his deficient complaint."). The Court believes this is true even though Plaintiffs declined Ford's entreaties to amend before its motion was filed.

To hold that Plaintiffs fail to state a proper claim for relief is one thing, but to explain what it would take to "nudge[ ] their claims across the line from conceivable to plausible" is quite another. *Twombly*, 550 U.S. at 570. Ford argues Plaintiffs should flesh out their Complaint by, *inter alia*, supplying their original PCA scores, showing how age contributed to lowering them, explaining why these scores would have prevented Plaintiffs from being fired, identifying employees who were either younger, healthier, or

not members of a protected class and were retained to work jobs for which Plaintiffs were qualified, providing evidence of discriminatory intent, and more. These are merely suggestions, however; neither *Twombly* nor *Iqbal* require Plaintiffs to allege all, or even most of these facts.

The "short and plain statement" standard of Fed. R. Civ. P. 8(a) still governs, and *Twombly* and *Iqbal* did not modify Rule 11(b), which allows plaintiffs, after a reasonable inquiry under the circumstances, to make specifically identified, unsubstantiated factual assertions which "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Finally, the Supreme Court unanimously upheld the sufficiency of the complaint in *Swierkiewicz*, even though its factual allegations were by no means extensive. Although *Swierkiewicz* endorsed the now-defunct, "no-set-of-facts" standard, *Twombly* cites *Swierkiewicz* with approval, and suggests that that complaint contained enough facts to state a plausible claim for relief. *Twombly*, 550 U.S. at 570. *Iqbal* clarifies that *Twombly* applies to all civil cases, and does not mention *Swierkiewicz*.

While *Iqbal* did not specifically overrule *Swierkiewicz*, it remains to be seen whether *Swierkiewicz*'s rejection of a heightened pleading standard in civil rights cases, and its implicit endorsement of a liberal pleading standard, can be reconciled with *Iqbal*'s plausibility pleading standard. Reading *Swierkiewicz* and *Iqbal* together, one can only say with certainty that: (1) the purpose of a complaint remains giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests[,]" *Twombly*, 550 U.S. at 555 (*quoting Conley*, 355 U.S. at 47 (omission in *Twombly*)); (2) the plain statement requirement and simplified pleading standard of Fed. R. Civ. P. 8(a) still

11

govern civil actions, except where the heightened standard of Rule 9 applies; (3) providing "fair notice" demands rejecting conclusory statements which are devoid of factual context, *Iqbal*, 129 S. Ct. at 1954; and (4) an employment discrimination plaintiff is not required to plead every element of the *McDonnell Douglas* prima facie case to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 515.

The reconciliation ends there. What is not clear going forward from *Iqbal*, is how much factual content is necessary to give the defendant fair notice, and how much content is necessary to "nudge claims" from merely conceivable to plausible. There is no roadmap for courts to distinguish between conclusory and well-pled factual allegations, and then determine whether such well-pled facts plausibly give rise to an entitlement to relief. If, as the Supreme Court suggests, determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 129 S. Ct. at 1950, there may be no exacting standard for courts to use in evaluating complaints under Fed. R. Civ. P. 8(a).

## V.    CONCLUSION

The Court **DENIES** Ford's Motion to Dismiss, and **GRANTS LEAVE** for Plaintiffs to amend their Complaint by **November 13, 2009**. Ford's response must be filed by **December 3, 2009**. The Court will hold a scheduling conference by telephone on **December 10, 2009 at 10:00 am**. The Court will initiate the conference call.

**IT IS ORDERED**.

                                        s/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: October 30, 2009

.

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 30, 2009.<br><br>s/Linda Vertriest<br>Deputy Clerk |